# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

ELIZABETH CHRISTENSEN on behalf of )
herself and all others similarly situated, )
)
          Plaintiff, )   Case No. 13-cv-11357
)
          v. )   Hon. George A. O'Toole Jr.
)
SUR LA TABLE, INC., )
)
          Defendant. )

## PLAINTIFF'S UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Submitted by:

Joseph J. Siprut*
*jsiprut@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois  60602
Tel:  312.236.0000
Fax:  312.948.9196

Alexander Shapoval
*ashapoval@siprut.com*
**SIPRUT PC**
1 Winnisimmet Street
Chelsea, MA 02150
Tel: 617.889.5800
Fax: 617.884.3005

* Admitted *Pro Hac Vice*

# TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................................1

II.     PROCEDURAL HISTORY............................................................................................2

III.    THE PROPOSED SETTLEMENT ...............................................................................3

        A.  Certification of the Proposed Settlement Class ................................................3
        B.  Merchandise Vouchers......................................................................................3
        C.  Sur La Table Compliance with Mass. Gen. Laws ch. 93 § 105(a) and Notice
            to Customers ......................................................................................................3
        D.  Class Notice ......................................................................................................4
        E.  Incentive Award to Class Representative ..........................................................4
        F.  Attorneys' Fees and Costs .................................................................................5

IV.     THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE PRELIMINARY
        APPROVAL .................................................................................................................5

        A.  The Proposed Settlement Meets All Criteria Establishing Fairness ...................5

                1.  Strength of the Case  .............................................................................8
                2.  Risk, Expense & Complexity of Case ...................................................9
                3.  Extent of Discovery ..............................................................................9
                4.  Amount of Recovery .............................................................................10
                5.  Arm's Length Negotiations  ..................................................................10
                6.  Experience of Counsel...........................................................................11

V.      THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS ...............................11

        A.  The Prerequisites of Rule 23(a) Are Satisfied ..................................................12

                1.  The Settlement Class Is Sufficiently Numerous ....................................12
                2.  There Are Common Issues of Law And Fact .........................................12
                3.  Plaintiff's Claims Are Typical Of The Settlement Class.......................14
                4.  Plaintiff And Her Counsel Will Adequately Protect The Interests Of
                    The Class................................................................................................15

        B.  The Prerequisites of Rule 23(a) Are Satisfied ..................................................15

                1.  Common Legal And Factual Questions Predominate.............................16
                2.  A Class Action Is Superior To Other Methods Of Adjudication............16

VI.     PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL..................17

VII.    THE FORM & METHOD OF SERVICE OF CLASS NOTICE SHOULD BE
APPROVED ....................................................................................................................18

VIII.   COURT SHOULD SCHEDULE A HEARING FOR FINAL SETTLEMENT
APPROVAL ...................................................................................................................19

IX.    CONCLUSION...................................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**UNITED STATES SUPREME COURT CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)............................................................................................12

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*City P'ship Co. v. Atlantic Acquisition L.P.*,
100 F.3d 1041 (1st Cir. 1996)...............................................................................9

*Durrett v. Providence Hous. Auth.*,
896 F.2d 600 (1st Cir. 1990)............................................................................5, 18

*Hotel Holiday Inn de Isla Verde v. N.L.R.B.*,
723 F.2d 169 (1st Cir. 1983).................................................................................5

*In re Community Bank of Northern Pa.*,
418 F.3d 277, 299 (3d Cir. 2005).........................................................................12

*In re Corrugated Container Antitrust Litigation*,
643 F.2d 195, 211 (5th Cir. 2010) ........................................................................9

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.2d 768 (3d Cir. 1995)....................................................................................6

*In re Pharm. Indus. Average Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009)............................................................................7, 10

*In re Traffic Executive Ass' n*,
627 F.2d 631 (2d Cir. 1980)..................................................................................7

*Lazar v. Pierce*,
757 F.2d 435 (1st Cir. 1985).................................................................................6

*Smilow v. Southwestern Bell Mobile Sys.*,
323 F.3d 32 (1st Cir. 2003)..................................................................................12

*United States v. Comunidades Unidas Contra La Contaminacion*,
204 F.3d 275 (1st Cir. 2000).................................................................................5

*Wal-Mart Stores. Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)..............................................................................6, 10

## UNITED STATES DISTRICT COURT CASES

*Abelson v. Strong*,
MDL No. 584, No. 85-0592, 1987 WL 15872 (D. Mass. July 30, 1987) .........................................14

*Bussie v. Allmerica Fin. Corp.*,
50 F. Supp. 2d 59, 76 (D. Mass. 1999) .................................................................................9

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
177 F.R.D. 54 (D. Mass. 1997).....................................................................................13

*Guckenberger v. Boston Univ.*,
957 F. Supp. 306 (D. Mass. 1997) .................................................................................12

*Hochstadt v. Boston Scientific Com.*,
708 F. Supp. 2d 95 (D. Mass. 2010) ........................................................................6, 7, 10

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
No. 05-10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)....................................................11

*In re Gilat Satellite Networks. Ltd.*,
No. 02-1510, 2007 WL 11 91048 (E.D.N.Y. Apr. 19, 2007) ...................................................7

*In re Livent. Inc. Noteholders Sec. Litig.*,
210 F.R.D. 512 (S.D.N.Y 2002) ....................................................................................16

*In re Lupron Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005)...................................................................................6, 9

*In Re Med. X-ray Film Antitrust Litig.*,
No. 93-5904, 1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997)....................................................7

*In re Relafen Antitrust Litig.*,
23 1 F.R.D. 527 (D. Mass. 2005)....................................................................................6

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ...................................................................................11

*In re Transkaryotic Therapies. Inc. Sec. Litig.,*
No. 03-10165, 2005 WL 3 I 78162 (D. Mass. Nov. 28, 2005)........................................ 13, 15-17

*Mack v. Suffolk County.*,
957 F. Supp. 306 (D. Mass. 1997) .................................................................................12

*McAdams v. Mass. Mut. Life Ins. Co.*,
2002 WL I 067449 (D. Mass. May 15, 2002).......................................................................12

*McLaughlin v. Liberty Mut. Ins. Co.,*
224 F.R.D. 304 (D. Mass. 2004)................................................................12

*Payne v. Goodyear Tire & Rubber Co.,*
216 F.R.D. 21 (D. Mass. 2003)..............................................................13, 14

*Priest v. Zayre Corp.,*
118 F.R.D. 552 (D. Mass. 1988)..............................................................14

*Rolland v. Celluci,*
191 F.R.D. 3 (D. Mass. 2000)..................................................................9

*Scott v. First Am. Title Ins. Co.,*
No. 06-286, 2008 WL 4820498 (D.N.H. Nov. 5, 2008)................................7

*Swack v. Credit Suisse First Boston,*
230 F.R.D. 250 (D. Mass. 2005)..............................................................14

*Walsh v. Great Atl. and Pac. Tea Co.,*
96 F.R.D. 632 (D.N.J. 1983)...................................................................11

**STATE COURT CASES**

*Tyler v. Michaels Stores. Inc.,*
464 Mass. 492, 499 (2013) ....................................................................8

**STATUTES AND FEDERAL RULES**

Fed. R. Civ. P. 23 ......................................................................... *passim*

Mass. Gen. L. ch. 93, § 105 ........................................................... *passim*

Mass. Gen. L. ch. 93A, § 9 ...........................................................2, 8, 15

Mass. Gen. L. ch. 93A, § 2 ..............................................................13

**OTHER AUTHORITIES**

Federal Judicial Center, Manual for Complex Litigation, § 21.632 (4th ed. 2004).......................16

Newberg On Class Actions, 2 Newberg & Conte § 11.41...............................6

# I. INTRODUCTION

Plaintiff Elizabeth Christensen ("Plaintiff") and Defendant Sur La Table, Inc. ("Sur La Table") (collectively the "Settling Parties") have entered into a Settlement Agreement in the above-referenced matter.[1] (A true and correct copy of the executed Settlement Agreement is attached as Exhibit 1 to the Declaration of Joseph Siprut ("Siprut Decl."), which is attached hereto as Exhibit I.) Accordingly, Plaintiff moves the Court for an Order: (1) preliminarily approving the Settlement Agreement as fair, reasonable, and adequate; (2) preliminarily approving the form, manner, and content of the Notice Postcard, Notice, Publication Notice, and Claim Form; (3) setting the date and time of the Fairness Hearing for a date between 130 and 150 days after the entry of the Preliminary Approval Order, subject to the Court's availability; (4) provisionally certifying the Class under Federal Rule of Civil Procedure 23 for settlement purposes only; (5) staying all pretrial proceedings and deadlines in the Action against Sur La Table, Inc. until the Court renders a final decision on approval of the Settlement; (6) provisionally appointing Plaintiff as the Class representative for settlement purposes; and (7) provisionally appointing Joseph J. Siprut and the law firm of Siprut PC as Class Counsel for settlement purposes. (A proposed Preliminary Approval Order is attached hereto as Exhibit II).

This action arises out of Plaintiff's allegations that Sur La Table has violated Mass. Gen. Laws ch. 93 § 105(a) by requesting and recording personal identification information — specifically, Zip Codes — from its credit card customers in its Massachusetts retail stores. Sur La Table disputes and denies that it has violated Mass. Gen. Laws ch. 93 § 105(a), or any other statutes or laws.

Although both sides believe their respective positions in the action are meritorious, they

---

[1] Capitalized terms have the definitions as set forth in the Settlement Agreement except as otherwise defined herein.

have concluded that, due to the uncertainties and expense of protracted litigation, it is in the best interest of Plaintiff, the putative settlement Class, and Sur La Table to resolve this action on the terms provided in the proposed Settlement Agreement attached hereto.

## II.  PROCEDURAL HISTORY

On or about April 23, 2013, pursuant to Mass. Gen. Laws ch. 93A § 9, Plaintiff sent notice to Sur La Table of her intent to file a class action complaint in the United States District Court for the District of Massachusetts for violations of Mass. Gen. Laws ch. 93 § 105(a) on behalf of herself and all others similarly situated. On June 6, 2013, Plaintiff filed a Complaint asserting that same claim in the United States District Court for the District of Massachusetts ("Complaint"). The Complaint is captioned *Christensen v. Sur La Table, Inc.*, 1:13-cv-11357-GAO. On that same day, Plaintiff also filed a Motion for Class Certification, which was denied without prejudice on October 25, 2013.

Following the filing of the Complaint, the parties exchanged information related to the merits of their respective claims and defenses. Meanwhile, Counsel for both parties conferred via email and telephone to consider the possibility of settling. Leading up to and including the settlement negotiations, the Settling Parties each examined the uncertainties of trial and the benefits to be obtained under a settlement, and they have each considered the costs, risks, and delays associated with the continued prosecution of this time-consuming litigation and the likely appeals of any rulings in favor of either Plaintiff or Sur La Table. After five months of significant arm's length, good faith settlement negotiations, the parties reached a settlement in principle.

On November 8, 2013, a Notice of Settlement and Request to Stay Response Deadline was filed with the Court, and the Settling Parties continued to negotiate the express details of their agreement. As the parties refined the Settlement's details, Notices of Settlement and Additional Requests to Stay Response Deadlines were filed on December 12, 2013, and January 9, 2014.  After the parties reached agreement on all of the terms of the written Settlement documents, the Settling

Parties drafted and executed the Settlement Agreement and Release. On February 14, 2014, the parties

filed a Notice of Settlement Agreement Execution with this Court.

## III. THE PROPOSED SETTLEMENT

The proposed settlement provides the following:

### A. Certification of the Proposed Settlement Class

The parties agree that the Class should be defined as:

> All persons with an address in the United States who, between June 6, 2009,
> and the date of entry of the Preliminary Approval Order, used a credit card to
> make a purchase at a Massachusetts Sur La Table, Inc. Store and whose
> Personal Identification Information, including, but not limited to a Zip Code,
> was provided to and recorded by Sur La Table, Inc. during the transaction.

### B. Merchandise Vouchers

Each Class Member will have an opportunity to receive a Voucher for either 1) $5.00 off

any purchase of Merchandise of any amount for one use within twelve (12) months; or 2) 20% off

a Merchandise purchase up to $50.00 for one use within six (6) months, each of which type of

Voucher is subject to additional terms set forth in the Settlement Agreement (hereafter a "Voucher"

or "Vouchers"). The Vouchers enable Class Members to receive a monetary benefit under this

settlement, and each Class Member is entitled to receive one (1) single-use Voucher regardless of

the number of alleged violations.

### C. Sur La Table's Compliance with Mass. Gen. Laws ch. 93 § 105(a) and Notice to Customers.

As a condition of the Settlement Agreement, Sur La Table agreed that it will continue to

comply with Mass. Gen. Laws ch. 93 § 105(a) and will not request and record Personal

Identification Information, including, but not limited to Zip Codes, on a credit card transaction

form, except for shipping, delivery, or installation of purchased merchandise, or services, or for a

warranty, from persons who use a credit card to make a purchase at a Massachusetts Sur La Table,

Inc. store.

**D. Class Notice**

Subject to the Court granting Preliminary Approval of the Class Settlement and Provisional Class Certification, Sur La Table and its retained Claims Administrator will provide the Class with notice of the proposed settlement by the following methods.

- **Email and U.S. Mail Notice.** Starting no later than thirty (30) calendar days after entry of the Preliminary Approval Order, Sur La Table will email the Notice Postcard to all Class Members for whom Sur La Table has an email address, excluding Class Members who previously indicated that they do not wish to receive email communications from Sur La Table. For those Class Members whose email address Sur La Table does not have, whose e-mail addresses do not work, or who previously indicated that they do not wish to receive email communications from Sur La Table, and for whom Sur La Table has a facially valid United States postal address, Sur La Table will send the Notice Postcard via U.S. Mail.

- **Settlement Website**. Starting no later than thirty (30) calendar days after entry of the Preliminary Approval Order, the Claims Administrator will set up an Internet website and post the Notice and Claim Form. The website will be active for a period of at least one hundred and forty (140) days.

- **Publication Notice.** Starting no later than forty (40) days after entry of the Preliminary Approval Order, Sur La Table will have the Publication Notice published once in a 1/4-page advertisement in the Massachusetts edition of *USA Today*. This notice will provide the URL address of the Claims Administrator's website, from which Class Members may obtain a copy of the Notice and the Claim Form.

**E. Incentive Award to Class Representative**

Subject to Court approval, Plaintiff will request an incentive award of $1,500.00 in

recognition of her contributions to the Class, the time she spent personally and directly in this litigation, and the risk she incurred in commencing the action, both financial and otherwise. The Court does <u>not</u> need to decide at this juncture whether and in what amount to approve Plaintiff's request for an incentive award. If this Court grants preliminary approval to the settlement, Plaintiff will separately file a motion in support of this request.

### F. Attorneys' Fees and Costs

Subject to Court approval, the parties have agreed to attorney's fees in the amount of $100,000.00, which reflects the considerable risk Plaintiff's Counsel took in this litigation, the skill and efficiency of the attorneys involved, and the duration and complexity of this matter, including the substantial time Plaintiff's Counsel must now spend in the preliminary and final approval phases of this litigation. The Court does <u>not</u> need to decide at this juncture whether to approve Plaintiff's request for attorneys' fees and costs. If this Court grants preliminary approval to the settlement, Plaintiff will separately file a motion supporting the fee request. Importantly, the Class Counsel Award will not be paid out of the Settlement Class benefits achieved by the Settlement, and will not dilute or reduce the Class benefits in *any* way. Rather, Class Counsel Award will be paid directly by Sur La Table, in addition to and separate from the Settlement Class benefits.

## IV. THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE PRELIMINARY APPROVAL.

### A. The Court Should Grant Preliminary Approval Of The Settlement Because It Is Within The Range Of Values Warranting Approval

Courts consistently recognize "the clear policy in favor of encouraging settlements," especially in the class action context. *Durrett v. Providence Hous. Auth.*, 896 F.2d 600, 604 (1st Cir. 1990) (internal quotation marks omitted) (reversing denial of approval of class action

settlement as an abuse of discretion). Moreover, public policy in the First Circuit highly favors settlement as a means of resolving disputes. *See Hotel Holiday Inn de Isla Verde v. N.L.R.B.*, 723 F.2d 169, 173 n. l (1st Cir. 1983) ("[S]ettlement agreements ... will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." (internal quotation marks omitted)); *United States v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000). This is especially so in the context of complex class-action litigation. *See, e.g., Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985) ("Last, we should point to the overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved."); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("[T]he law favors class action settlements."); *Wal-Mart Stores. Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context." (internal quotation marks omitted)).

By favoring the settlement of complex class-action litigation, the law seeks to minimize the litigation expense on both sides, and to reduce the strain on judicial resources. *See Lazar*, 757 F.2d at 440; *In re General Motors Com. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3rd Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); Newberg On Class Actions, 2 Newberg & Conte § 11.41. In order to approve a proposed class action settlement, a court must generally follow two steps:

> [T]he judge is required to scrutinize the proposed settlement to ensure that it is fair to the persons whose interests the court is to protect. Those affected may be entitled to notice and an opportunity to be heard. This usually involves a two-stage procedure. First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing.

*In re Relafen Antitrust Litig.*, 23l F.R.D. 52, 57 (D. Mass. 2005) (quoting Manual For Complex Litigation, Fourth ("MCL") § 13.14); *see also In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d at 138; *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 97 n.1 (D. Mass. 20l0) ("[T]he approval of a settlement agreement is a two-step process, which first requires the court to make a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms.").

At the preliminary approval stage, the Court is not required to undertake an in-depth consideration of the relevant factors for final approval. Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." MCL § 21.632. The Court need only find that there is "probable cause to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass' n*, 627 F.2d 631, 634 (2d Cir. 1980) (internal quotation marks omitted); *see also Scott v. First Am. Title Ins. Co.*, No. 06-286, 2008 WL 4820498, at *3 (D.N.H. Nov. 5, 2008) ("For purposes of preliminary approval, the court considers whether the proposed settlement is illegal or collusive."). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process, the fairness hearing. *In re Gilat Satellite Networks, Ltd.*, No. 02-1510, 2007 WL 1191048, at *9, *12 (E.D.N.Y. Apr. 19, 2007).

In deciding whether preliminary approval is warranted, "there is generally a presumption in favor of settlement '[i]f the parties negotiated at arm's length and conducted sufficient discovery.'" *Hochstadt*, 708 F. Supp. 2d at 107 (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009)). Thus, "[p]reliminary approval of a proposed settlement is appropriate where it is the result of serious, informed, and non-collusive negotiations,

where there are no grounds to doubt its fairness and no other obvious deficiencies […] and where the settlement appears to fall within the range of possible approval." *In re Gilat Satellite Networks, Ltd.*, 2007 WL 1191048, at *9 (citing MCL § 30.41 and *In Re Med. X-ray Film Antitrust Litig.*, No. 93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997)).

### 1.    Strength of The Case

Plaintiff asserts that Sur La Table violated Mass. Gen Laws ch. 93 § 105 by requesting and recording its customers' personal identification information, specifically their Zip Codes, in the course of completing credit card transactions. Mass. Gen Laws ch. 93 § 105(a) states in relevant part:

> No person, firm, partnership, corporation or other business entity that accepts a credit card for a business transaction shall write, cause to be written or require that a credit card holder write personal identification information, not required by the credit card issuer, on the credit card transaction form. Personal identification information shall include, but shall not be limited to, a credit card holder's address or telephone number.

Mass. Gen Laws ch. 93 § 105 was designed for the "principal of guard[ing] consumer privacy in credit card transactions." *Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 499 (2013).

Violators of the statute shall be liable under Chapter 93A for "actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation." Mass. Gen Laws ch. 93A § 9.

Sur La Table denies liability and claims that class certification would be difficult for Plaintiff as it argues that Plaintiff will not be able to demonstrate typicality, ascertainability, preponderance, or superiority. Sur La Table also contends that its actions do not run afoul of Mass. Gen Laws ch. 93 § 105 or fall within the enumerated exceptions to liability under Mass. Gen Laws ch. 93 § 105. Clearly, one of the factors to be considered as to the fairness of a class action

settlement is Sur La Table's possible defenses.

Notwithstanding the merits of the underlying class claims, in the end, the settlement reflects "a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Lupron,* 228 F.R.D. at 98. In evaluating the adequacy of a settlement, the Court does not rule on the merits of either the Class's claims or defendant's defenses. *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 76 (D. Mass. 1999).

### 2. *Risk, Expense & Complexity of Case*

Due to the nature of Plaintiff's case, trial would require an examination of Sur La Table's policies, procedures, and practices, as well as an examination of a number of Sur La Table's current and former employees. In addition, as set forth above, there are a number of exceptions to Mass. Gen Laws ch. 93 § 105 which Sur La Table asserts are applicable. The uncertainty as to whether Mass. Gen Laws ch. 93 § 105 applies to Sur La Table's alleged conduct and whether these exceptions apply in this case creates substantial risk for both sides, and are issues that will be expensive and time consuming to litigate through trial and appeals.

### 3. *Extent of Discovery*

The Settling Parties agreed to the terms of the Settlement after conducting adequate informal discovery and investigation to determine how and when Sur La Table used Zip Code information and the size of the class, and to assess the strengths, weaknesses, and likely expense of taking this case to trial.

While the parties have exchanged significant information to evaluate the strength of Plaintiff's claims (and Sur La Table's defenses), the amount of formal discovery taken is not a prerequisite to a class action settlement. *See also In re Corrugated Container Antitrust Litigation,* 643 F.2d 195, 211 (5th Cir. 2010) ("It is true that very little formal discovery was conducted and that there is no voluminous record in the case. However, the lack of such does not compel the

conclusion that insufficient discovery was conducted." (emphasis omitted)). Here, information more than sufficient to make a reasonable and informed decision was made readily available, meaning that there was a reasonable basis for settlement — and thus it should be approved.

### 4. *Amount of Recovery*

The Settlement allows Class Members to request a Voucher for either 1) $5.00 off any purchase of Merchandise of any amount for one use within twelve (12) months; or 2) 20% off a Merchandise purchase up to $50.00 for one use within six (6) months, each of which type of Voucher is subject to additional terms set forth in the Settlement Agreement. Thus, the value of the Voucher can range between $5.00 and $10.00. Given the low-cost of products for sale at Sur La Table, a $5.00 to $10.00 value gives consumers access to numerous products with ***no need to spend any out of pocket money***.

### 5. *Arm's Length Negotiations*

The proposed Settlement is the result of intensive, arm's-length negotiations between the Settling Parties. This factor weighs strongly in favor of preliminary approval of the settlement. *Hochstadt*, 708 F. Supp. 2d. at 107 ("[T]here is generally a presumption in favor of settlement [i]f the parties negotiated at arm's length and conducted sufficient discovery.'" (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d at 32-33.)). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal-Mart Stores*, 396 F.3d at 116 (quoting MCL (Third) § 30.42 (1995)).

Where a settlement is achieved through arm's-length negotiations by experienced counsel and there is no evidence of fraud or collusion, "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges*

*Holding Com. Sec. Litig.*, No. 05-10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see also Walsh v. Great Atl. and Pac. Tea Co.*, 96 F.R.D. 632, 642-43 (D.N.J. 1983) ("[A] court should be slow to substitute its own judgment for that of experienced counsel who, as here, have arrived at a settlement after extensive litigation and a careful assessment of the risks and potential rewards involved in a full trial and appeal."), aff'd, 726 F.2d 956 (3d Cir. 1983); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280-81 (S.D.N.Y. 1999) ("[A] presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." (internal quotation marks omitted)).

### 6. Experience of Counsel

The Settling Parties are represented by counsel highly experienced in class action litigation. Counsel for Plaintiff in this action is highly experienced in consumer class actions and privacy issues. In particular, Siprut PC and the firm's attorneys have represented hundreds of thousands of consumers in numerous consumer class actions asserting violations of Mass. Gen. Law ch. 93 § 105, and similar statute statutes in other States. *See* Exhibit 2 to the Siprut Decl. In short, Plaintiff's Counsel is well qualified to conduct the proposed litigation and to assess its settlement value. Based on that experience, Counsel believes that the proposed settlement is one that is fair and adequate to members of the Class.

## V. THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS

In granting preliminary settlement approval, the Court should also preliminarily certify the Class for purposes of the Settlement. In order to maintain a class action, plaintiffs must demonstrate that the class meets all four requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are

typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). *See Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 38 (1st Cir. 2003). In addition, the case must fit into one or more of the categories enumerated in Rule 23(b). *Mack v. Suffolk County*, 191 F.R.D. 16, 22 (D. Mass. 2000); *see also In re Community Bank of Northern Pa.*, 418 F.3d 277, 299 (3d Cir. 2005) ("'[A]ll Federal Circuits recognize the utility of Rule 23(b)(3) settlement classes' as a means to facilitate the settlement of complex nationwide class actions." (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 618 (1997))).

### A. The Prerequisites Of Rule 23(a) Are Satisfied.

#### 1. The Settlement Class Is Sufficiently Numerous.

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(l); *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997). Courts in this district have typically held that a "40 person class is generally found to establish numerosity." *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 307 (D. Mass. 2004) (internal quotation marks omitted); *see also McAdams v. Mass. Mut. Life Ins. Co.*, 2002 WL l067449, at *3 (D. Mass. May 15, 2002). Here, Class membership is well into the thousands, and joinder of all members would be impracticable.

#### 2. There Are Common Questions Of Law And Fact.

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). This "commonality" requirement is satisfied if "common questions of law or fact exist and class members' claims are not in conflict with one another...." *Mack*, 191 F.R.D. at 23. The commonality requirement does not require that class members' claims be identical, and "[a] *single* common legal or factual issue can suffice." *Payne v. Goodyear Tire & Rubber Co.*, 216

F.R.D. 21, 25 (D. Mass. 2003). "Thus, the commonality requirement ordinarily is easily met." *Id.* (citing *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997) (describing commonality as a "low hurdle")). Further, "[t]he threshold of commonality is not a difficult one to meet, especially when there are a number of common issues of fact and law that the class members would be required to establish to prove the defendants' liability, as well as their entitlement to damages." *In re Transkaryotic Therapies. Inc. Sec. Litig.*, No. 03-1 0165, 2005 WL 3178162, at *2 (D. Mass. Nov. 28, 2005) (internal quotation marks omitted).

Here, there are numerous common legal and factual issues, and the same facts giving rise to the Plaintiff's claims give rise to the rest of the Class' claims. Indeed, Class Members would have to prove identical facts and answer identical questions were they to pursue their claims individually. The common legal and factual issues include, among others:

i. whether Defendant violated Mass. Gen. Laws ch. 93 § 105(a), thereby violating Mass. Gen. Laws ch. 93A § 2;

ii. whether Plaintiffs and the Class have sustained damages and, if so, the proper measure thereof; and

iii. whether Defendant should be enjoined from collecting Zip Codes from consumers using credit cards and/or debit cards.

Thus, commonality is readily satisfied by the similarity of the experiences of the Plaintiff and other Class Members.

### 3. *Plaintiff's Claims Are Typical Of Those Of The Settlement Class.*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement is similar to commonality and is also "not highly demanding because the claims only need to share the same

essential characteristics, and need not be identical." *Payne*, 216 F.R.D. at 26 (internal quotation marks omitted). "As with the commonality requirement, the typicality requirement does not mandate that the claims of the class representative be identical to those of the absent class members." *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 260 (D. Mass. 2005); *see also Abelson v. Strong*, MDL No. 584, No. 85-0592, 1987 WL 15872, at *2 (D. Mass. July 30, 1987) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met. Seen in this light, the burden on plaintiffs in proving typicality is not very substantial." (citations and internal quotation marks omitted)); *Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent members." (citation and internal quotation marks omitted)).

Where the plaintiff's injuries "arise from the same events or course of conduct as do the injuries that form the basis of the class claims, and when the plaintiff's claims and those of the class are based on the same legal theory," the typicality requirement is satisfied. *Swack*, 230 F.R.D. at 260 (internal quotation marks omitted); *see also Payne*, 216 F.R.D. at 26. Here, the claims of the Plaintiff (the proposed Class Representative), involve questions of law and fact typical, if not identical, to the claims of other Class members. The gravamen of Plaintiff's claims is that, like the rest of the Class, she had her personal identification information collected by Sur La Table in violation of Mass. Gen. Laws ch. 93 § 105(a) and ch. 93A § 9.

The claimed injuries to Plaintiff and the members of the Class are attributable to the same alleged course of conduct by the Defendant, and any liability for this conduct would be predicated on the same legal theories. As such, the Rule 23(a)(3) typicality requirement is satisfied.

### 4. *Plaintiff And Her Counsel Will Fairly And Adequately Protect The Interests Of The Class.*

Rule 23(a)(4) is satisfied if the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: (1) whether the plaintiff's counsel are qualified, experienced, and generally able to conduct the litigation; and (2) whether the class representative has interests antagonistic to those of the class. *See In re Transkaryotic Therapies*, 2005 WL 3178162, at *4.

Counsel for Plaintiff in this action is highly experienced in consumer class actions. In particular, Siprut PC and the firm's attorneys have represented hundreds of thousands of consumers in numerous consumer class actions asserting violations of Mass. Gen. Law ch. 93 § 105. *See* Exhibit 2 to the Siprut Decl. In short, Plaintiff's Counsel is well qualified to conduct the proposed litigation and to assess its settlement value. Based on that experience, Counsel believes that the proposed settlement is one that is fair and adequate to members of the Class.

Moreover, Plaintiff and the Class share the common goal of maximizing recovery, and there is no conflict between them. Rule 23(a)(4) is therefore satisfied.

### B. The Class Claims Satisfy The Prerequisites Of Rule 23(b)(3).

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are easily met in this case.

### 1.    Common Legal And Factual Questions Predominate.

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re Livent. Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 517 (S.D.N.Y. 2002) (internal quotation marks omitted) (common issues predominate where "each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct [and] [t]he only individualized question concerns the amount of damages'"); *In re Transkaryotic Therapies*, 2005 WL 3178162, at *2 ("where ... common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." (internal quotation marks omitted)).

Here, all the Class Members' claims against Defendant are based on the same alleged course of conduct by the Defendant. There are numerous common issues relating to the Defendant's alleged liability, which predominate over any individualized issues. The predominance requirement of Rule 23(b)(3) is therefore satisfied.

### 2.    A Class Action Is Superior To Other Methods Of Adjudication.

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by ... class members; (C) the desirability ... of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A-D). Considering these

factors, this class action is clearly "superior to other available methods for the fair and efficient adjudication" of the claims of the large number of Sur La Table's consumers who Plaintiff alleges provided their Zip Code to Sur La Table in violation of Mass. Gen. Laws ch. 93 § 105(a). Plaintiff is unaware of any other litigation already commenced by individual Class Members, which is not surprising given the costs associated with such litigation. Absent the class-action device, "the very real risk [is] that potential class members with relatively small claims would not have the financial incentives or wherewithal to seek legal redress for their injuries." *In re Transkaryotic Therapies*, 2005 WL 3 178162, at *2 (internal quotation marks omitted).

The size of Plaintiff's individual claims against Defendant, together with the disproportionate cost of individualized litigation, make it unlikely that the vast majority of Class Members would be able to seek relief without class certification. Moreover, it is clearly desirable to concentrate the claims of all Class Members in this forum, and Plaintiff does not foresee any difficulties in the management and settlement of this action as a class action.

Accordingly, the requirements of Rule 23(b)(3) are satisfied, and the Court should preliminarily certify this action as a class action on behalf of the proposed Class for settlement purposes only.

## VI. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Rule 23(g) governs the standards and framework for appointing class counsel for a certified class, and sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(2). The Court may

also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(l)(B). "No single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) advisory committee note.

Information relevant to each of these criteria is set forth in the accompanying declaration of Joseph Siprut of Siprut PC. Siprut Decl.¶ 4-15. As the accompanying declaration demonstrates, Counsel has had very substantial experience in handling class actions and other complex litigation, including consumer protection class actions.

## VII.    THE FORM AND METHOD OF CLASS NOTICE SHOULD BE APPROVED.

In order to afford class members the opportunity to object to, or opt out of, a proposed class-wide settlement, reasonable notice must be provided to those class members. *Durrett*, 896 F.2d at 604. Where a proposed settlement is coupled with a request for class certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure, class notice must meet the requirements of both Rules 23(c)(2) and 23(e). In terms of the form and manner of providing notice, Rule 23(e)(1) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the Proposal," while Rule 23(c)(2)(B) requires the notice to be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

The proposed Class notice meets these standards. As demonstrated below, the proposed written notice goes well beyond the requirements set forth above. *See* Exhibits B-E to Exhibit 1 attached to the Declaration of Joseph J. Siprut. In fact, the notice provisions provide:

1. A brief summary of the claims alleged in the action;

2. An explanation of the proposed terms of the settlement and the relief the Class Members are entitled to receive under the agreement, and the method by which to elect the benefit;

3. An explanation of the Class Members' rights to opt-out of and/or object to settlement within given time-frames;

4. An explanation that the Class Members who do not opt-out will be bound by the proposed settlement and judgment and will have released their claims;

5. An explanation that the Class Members who do not opt-out will be represented by counsel for the named Plaintiff; and

6. An identification of Class Counsel and a means for making inquiries thereof.

In this case, the proposed settlement provides for direct notice by email or first class U.S. Mail and indirect notice through Publication Notice and on the Settlement Website. Moreover, if any email notices are bounced back, the Settlement Administrator will send the notice via first class U.S. mail to those individuals whose emails rejected the notice, if Sur La Table possesses a facially valid United States postal address for those individuals. These proposed methods of notice are reasonably calculated to reach the class members by the best means practicable and should be approved.

## VIII.   THE COURT SHOULD SCHEDULE A HEARING FOR FINAL APPROVAL.

Following notice to the Class Members, a fairness hearing should be held on the proposed settlement. *Manual for Complex Litigation*, § 21.633. Accordingly, the Parties request that the Court schedule a hearing on final approval of the settlement to be held on a date between 130 and 150 days after entry of the Preliminary Approval Order, subject to the Court's availability. The hearing on the final settlement approval should be scheduled now and set forth in the Preliminary Approval Order, so that the date can be disclosed in the class notice.

## IX.   CONCLUSION

Based upon the foregoing, and because the proposed settlement is fair, reasonable, and

advantageous to the proposed Class Members, Plaintiff respectfully requests that the Court enter an Order, similar to the attached Exhibit II:

A. Preliminarily approving this Agreement as being fair, reasonable, and adequate;

B. Preliminarily approving the Notice Postcard, Notice, Publication Notice, and Claim Form described in sections 1.3, 1.12, 1.13, and 1.20 of the Settlement Agreement, and attached thereto as Exhibits B - E;

C. Setting the date and time of the Fairness Hearing to be held between 130 and 150 days after entry of the Preliminary Approval Order;

D. Provisionally certifying the Class under Fed. R. Civ. P. 23(a) and (b)(3) for settlement purposes only;

E. Staying all pretrial proceedings and deadlines in the Action against Sur La Table, Inc. until the Court renders a final decision on approval of the Settlement;

F. Appointing Plaintiff as the Class representative for settlement purposes only;

G. Appointing Joseph J. Siprut and the law firm of Siprut PC as Class Counsel for settlement purposes only;

H. And for any further relief the Court deems just and proper.


Dated: February 27, 2014                               Respectfully submitted,

                                                       ELIZABETH CHRISTENSEN, individually
                                                       and on behalf of all others similarly situated


                                                       By:_____
                                                          One of the Attorneys for Plaintiff
                                                          And the Proposed Putative Class

Joseph J. Siprut*
*jsiprut@siprut.com*
**SIPRUT** PC
17 North State Street
Suite 1600
Chicago, Illinois  60602
Tel:  312.236.0000
Fax:  312.948.9196


Alexander Shapoval
*ashapoval@siprut.com*
**SIPRUT** PC
1 Winnisimmet Street
Chelsea, MA 02150
Tel: 617.889.5800
Fax: 617.884.3005

\* Admitted *Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiff's Unopposed Motion For Preliminary Approval Of Class Action Settlement** was served to Defendant's counsel on February 27, 2014 via electronic mail.

Joseph J. Siprut

4840-5143-8104, v. 2